GOLDING FABRICS CORPORATION *v.* UNITED STATES (No. 2567)[1]

1. REMISSION OF ADDITIONAL DUTY—SUFFICIENCY OF EVIDENCE.

   Merchandise was bought January 4 and entered December 3 at the purchase price. At the time of importation both United States and foreign markets were declining, and appellant had received offers of similar merchandise from the shipper at a lower price. Prior to entry, appellant, according to a well-established custom, requested information as to value from the

---

[1] T. D. 41345

examiner, and was informed that the purchase price was correct. The burden imposed by section 489, Tariff Act of 1922, upon a petitioner for remission of additional duty imposed for undervaluation, to show by "satisfactory evidence" that there was no fraud in the entry was sustained.

2. EVIDENCE, INTERPRETATION—CLERICAL ERROR.

Entrant submitted to examiner an "information sheet." It was customary, if the prices stated on the sheet were approved, for the examiner's clerk to indicate it by his initials and a check mark in the appropriate column. Through inadvertence the check mark was placed in a column where it meant nothing. The evidence should have been received as if the check mark vere in the proper column, especially since the examiner testified that the notations• on the sheet meant that the prices were correct.

## United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, Abstract 48747

[Modified.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*John G. Lerch* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument December·10, 1925, by Mr. Brooks, jr., and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers denying the petition of the appellant for remission of additional duties assessed against imported merchandise covered by entries Nos. 16519 and 20892.

It was agreed in open court at the time this case was argued orally by counsel for the·parties, that the judgment of the court below, in so far as it relates or pertains to the additional duties assessed against the merchandise covered by entry No. 20892 should be affirmed. Accordingly, our consideration of the case will be confined to the issues raised by the parties in connection with entry No. 16519.

It appears from the record in the case that certain silk velvets were purchased by the appellant January 4, 1923, for future delivery; that they were exported from Germany on or about November 9, 1923, and entered on December 3, 1923, at the invoice prices, which were approximately 7½ per centum less than the final appraised values; that the invoice prices were the prices actully paid for the merchandise; that, at the time of importation, both the foreign and the United States markets for this merchandise were declining; that the appellant had received offers of similar merchandise, from the shipper of the involved merchandise, at lower prices than the entered values; that generally the ʻappellant instructed its broker to make

inquiries of the appraiser as to the proper valuation of merchandise imported by it, prior to the entry of the same, and that such instructions were given and duly followed by the broker as to the merchandise covered by entry No. 16519; that, in compliance with the instructions of the appellant, the broker submitted an "information sheet" to the examiner of merchandise at the port of New York and requested that such information as was known to the examiner, as to the market value of the merchandise at the time of exportation, be furnished and noted on such "information sheet." This paper was introduced in evidence, as Exhibit 1, and made a part of the record in the case. There appear thereon the number and date of the invoice; the date on which the merchandise was purchased; the name of the manufacturer; a description of the merchandise and the invoice prices thereof, together with a request for information as to the market values of the merchandise at the date of exportation, which reads as follows:

It is requested that the appraiser furnish the latest information as to value in his possession, as we are unable to obtain any definite information as to the market value on date of exportation, due to unusual conditions. It is understood and agreed that such information if given is in no sense an appraisement, nor binding upon the appraiser's action on appraisement, as appraisement of merchandise must be made at the market value prevailing on date of exportation, in accordance with the law, irrespective of any information given in advance of regular entry.

GOLDING FABRICS CORPORATION.
(*Importer's Signature.*)

Following the quoted printed request there are seven columns with appropriate captions, two of which were designed for use by the appraiser and are under the following captions, respectively; "Appraiser's information," and "Basis of examiner's advice."

It appears that a clerk in the examiner's office, with authority to act for the examiner, made a penciled notation in the form of a check mark in a column with a caption reading as follows: "Payments in accordance with current exchange or otherwise fixed," and signed his initials in the column under the caption "Appraiser's information."

The witness Loehr, testifying for the importer, said: That he was connected with the firm of S. Stern, customs brokers; that he supervised the preparation of entry No. 16519 and directed one of the clerks in his office to present the "information sheet" to the examiner; that he understood from the notations and initials made by the examiner's clerk that the prices stated on the invoice were the values at which the merchandise should be entered. He testified on cross-examination in part as follows:

Q. Did you personally present the invoice to the examiner?—A. No, sir; I did not.

Q. Who did present it to the examiner?—A. Why, Mr. Herzogg, I presume; the usual procedure is for him to present it.

Q. You don't know whether Mr. Hart said anything to Mr. Herzogg with reference to the market value, do you?—A. I do not.

Q. Now, have you ever before had occasion to present an invoice to an examiner and ask his opinion as to the market value?—A. Yes; surely.

Q. Now, isn't it customary for examiners, in all cases where an application for information is presented, to make a notation as to whether they have information or whether they have none?—A. It seems that they all have different methods.

Q. Will you please look at Exhibit 1 and state whether there is anything upon that from which you read or from which you observe that the examiner said that the entered value was the market value?—A. Yes; this check here [indicating] and his initials.

Q. What does it say above the check?—A. It doesn't say anything.

Q. Then why, on what basis do you claim that because of that check the inference was drawn by you that the appraised value would be the same as the entered value?—A. Because if there was any other information he would state it here.

Mr. M. J. Hart, called as a witness by the importer, testified as follows:

Q. Mr. Hart, are you an examiner of merchandise at the port of New York?— A. I am.

Q. The previous witness testified that this information sheet was submitted to you, this Exhibit 1, in Petition 1832-R, was submitted to you by S. Stern, customs broker, to ascertain whether the invoice values were correct, in accordance with the invoice values submitted to you with that sheet. Are these your initials on this sheet?—A. No.

Q. Can you say who it is?—A. Yes.

Q. Is it your clerk?—A. My clerk.

Q. He can authoritatively sign these sheets?—A. Yes.

Q. This broker's clerk also testified that from that sheet, he understood from your clerk you had no information as to the foreign market value, is that right?

General Appraiser MCCLELLAND. Put it a little stronger. He said there was a check on there that meant the invoice prices were correct.

WITNESS. I would say that at the time this sheet was presented these prices were correct.

The Government offered no evidence.

Upon this record the Board of General Appraisers denied the petition.

The petition was filed in the court below in accordance with the provisions of section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned

upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise * * *.

The burden of proof was upon the appellant on the trial in the court below, to establish by satisfactory evidence that in entering the merchandise at values less than those returned upon final appraisement, it had no intention to defraud the revenues of the United States or to conceal or misrepresent the facts or to deceive the appraiser.

The appellant claims that, while there is no evidence in the record of any particular effort made by it to ascertain the foreign values at the time of exportation other than to inquire of the appraiser as to such values, yet, in view of the circumstances of the case and the fact that the customs officials at the port of New York approved the policy of importers' seeking information of the appraiser as to foreign values of imported merchandise prior to the entry thereof, and the appellant having requested such information, and having acted upon the information received from the Government examiner, it had, by proving such facts and circumstances, fully sustained the burden imposed upon it by the statute.

The Government contends, and the board held, that the appellant did not receive such information from the examiner as warranted the opinion or belief on the part of the agents of the appellant that the prices stated on the invoice were the correct foreign values of the merchandise at the time of exportation; that, according to the testimony of the examiner, the notation made on Exhibit 1 by his clerk could be interpreted only as meaning that the prices stated in the invoice were the foreign values of the merchandise on the date *the request for information was made*, and, accordingly, the evidence submitted by the appellant was not sufficient under the statute.

It appears without contradiction that, at the time of the importation, both the foreign and United States markets for this merchandise were declining, and that the appellant had received offers of similar merchandise from the same shipper at lower prices than those at which this merchandise was entered. Moreover, in accordance with the policy of the proper customs officials, the appellant submitted to the examiner such information in regard to the merchandise as seems to us to be sufficient for proper action on his part, and requested information as to the foreign values of the merchandise at the time of *exportation*. The appellant did not request information as to the foreign values of the merchandise on the date the "information sheet" was presented to the examiner. So far as we can learn from this record there was no reason whatever for the examiner, or his clerk, to inform the appellant as to the foreign values of the

merchandise on the date of the presentation of the "information sheet" to such officials.

The clerk's notations are not very elucidating to us, as to what information he had, if any, concerning the questions propounded to him by the appellant. It is within the realm of possibility that he intended to indicate that he had no information on the subject However, it should not be forgotten that the invoice prices wei stated on the "information sheet" for the attention and informatior of the appraiser, and that it is consistent with the practice ol customs officials to indicate their approval of values by just such notations as appear on Exhibit 1. In any event, the action of that official is deserving of more serious consideration than that accorded by an interpretation on his official notations which make them wholly unresponsive to the inquiry. The fact that the check mark was placed on the "information sheet" in a column other than that designated for use by the appraiser or examiner should be given no significance in a consideration of this case, as it is evident that it was placed there inadvertently.

We think that, under the circumstances of this case, the appellant was justified in interpreting the official action of the examiner's clerk to mean that the invoice prices were the equivalent of the foreign values of such merchandise as of the date of exportation.

Since it appears in the record without contradiction that, at the time of importation, both the foreign and United States markets for this merchandise were declining, and that the appellant had received offers of similar merchandise from the shipper of the merchandise involved in this case, at prices lower than the entered values, and, having requested information from the appraiser as to the values at which the merchandise should be entered and having acted upon a reasonable interpretation of the communication received from the Government officials in regard thereto, we are of opinion that the appellant was entitled to a finding by the court below that, in entering the merchandise, covered by entry No. 16519, at less values than those returned upon final appraisement, the appellant was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts or to deceive the appraiser as to the values of the merchandise.

For the reasons stated the judgment is modified, being reversed in so far as it relates to the additional duties assessed against the merchandise involved in entry No. 16519, and in all other respects affirmed.

*Modified.*